Sammy **GLORIOSO**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. GC 7014-K.**

United States District Court,
N. D. Mississippi,
Greenville Division.

Sept. 8, 1971.

James A. Tuck, Detroit, Mich., Dave Womack, Belzoni, Miss., for plaintiff.

William M. Dye, Asst. U. S. Atty., Oxford, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, District Judge.

This action was instituted by Sammy Glorioso, plaintiff, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, et seq., seeking damages upon the claim that through negligent certification by defendant's examining physician or physicians he was found physically fit for induction into the Armed Forces despite a disqualifying pre-existing head injury. Plaintiff alleges that this injury was aggravated during the course of his brief military career and was the cause of self-inflicted wounds after his discharge from service.

1

The government moved for summary judgment pursuant to Rule 56 F.R.Civ. P., on the ground that the pleadings and a special stipulation of facts failed to establish a claim upon which relief can be granted because of the well-known *Feres* doctrine.[1]

The stipulated facts establish the following: On January 16, 1969, plaintiff presented himself for enlistment at the Armed Forces Examining and Entrance Station at Jackson, Mississippi. The next day, January 17, he underwent the usual processes for induction, including a physical examination, and was approved for enlistment in the United States Army. Plaintiff had received a head injury in 1964 which left him unconscious for three months, and this fact was reported to the examining physician. Nevertheless, plaintiff was on January 17 given the oath of enlistment into the Army and was flown to Fort Polk, Louisiana, the same day. On January 24, he was referred to the army hospital for symptoms manifested that morning while on active duty;[2] and on February 18, he was honorably discharged from the Army for medical reasons. Subsequently, he was denied eligibility for veterans' benefits because his disorder was found to have pre-existed his entry into military service.

The essence of plaintiff's claim is that the negligent act (i. e., the medical examination) was committed *prior to enlistment,* although his psychiatric injury occurred after enlistment as a result of this negligence and while plaintiff was an active member of the armed forces.

The sole question presented is whether the *Feres* doctrine bars plaintiff's action. In *Feres,* the Supreme Court held: " * * * [T]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the *injuries* arise out of or are in the course of activity incident to service." (340 U.S. 146, 71 S.Ct. 159) (Emphasis added).

The Court, in reviewing the peculiar relationship existing between the government and members of the Armed Forces, held in effect that there was nothing in the context or legislative history of the Tort Claims Act which would indicate a Congressional intent to bring within the scope of the Act claims of members in the military service arising from or incident to their service.

In United States v. Brown, 348 U.S. 110, 113, 75 S.Ct. 141, 144, 99 L.Ed. 139 (1954), the Supreme Court adhered "to the line drawn in the *Feres* case between injuries that did and injuries that did not arise out of or in the course of military duty." Emphasizing that the *Feres* doctrine is based upon the unique relationship existing between soldier and government, the *Brown* Court declared:

"The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, lead the Court [in Feres] to read that Act as excluding claims of that character." (348 U.S. 112, 75 S.Ct. 143)

The lower courts have consistently followed the *Feres* rule by holding that the government is not liable under the Federal Tort Claims Act for injuries to servicemen when the injuries arise out of, or are in the course of activity incident to service.[3] Ordinarily, the terms

---

1. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

2. Plaintiff claims as a result of the psychiatric injury received in military service, he suffered additional damages by virtue of a self-inflicted abdominal stab wound on May 28, 1969.

3. Lowe v. United States, 440 F.2d 452 (5 Cir. 1971); Shults v. United States, 421 F.2d 170 (5 Cir. 1969); United States v. Lee, 400 F.2d 558 (9 Cir. 1968), cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695; Knoch v. United States, 316 F.2d 532 (9 Cir. 1963); Zoula v.

"course of activity incident to service" and "course of military duty" are used interchangeably and are regarded as having the same meaning.[4]

An interesting comment on the *Feres* rule was recently made by Judge Smith in Coffey v. United States, supra, 324 F.Supp. at 1088:

"* * * *Feres* can only be explained on the ground that the enforcement of army discipline in general is more difficult if persons involved in enforcing discipline may be treated as the *causative agents* of suits against the United States brought by persons who are the subjects of army discipline." (Emphasis added)

We conclude that the *Feres* doctrine is here controlling, since it is stipulated that the plaintiff was in an active duty status at the time of his injury.[5] Plaintiff's assertion that his pre-enlistment or "civilian" status at the time of the allegedly negligent examination should be determinative, thus avoiding the *Feres* holding, is without merit. This exact contention was thoroughly examined and rejected in Healy v. United States, where a plaintiff claimed he was negligently examined and found fit by the examining physician despite disqualifying heart condition. After induction, plaintiff suffered an injury and was soon medically discharged. Denying recovery, the *Healy* Court stated (192 F. Supp. 327, 328):

"Negligence is the gist of the action under the Federal Tort Claims Act, but mere negligence does not support a claim. Unless consequent injury results from the breach of duty, no cause of action exists. It is only the injury which constitutes the invasion of the personal right which is compensable."

* * * * * *

"The mere induction of plaintiff into the armed forces which followed from the alleged negligent physical examination and certification did not, in itself, cause his injury or the aggravation of his pre-existing injury. This came about only as a result of his activity following induction when he was subject to military orders * * *."

* * * * * *

"The original claimed negligent examination cannot be separated from the ultimate injury. Here the injury is inseparably intertwined with, and related to, plaintiff's active military service."[6]

The Ninth Circuit in United States v. Lee, 400 F.2d 558, 562, cert. denied 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695, in applying the *Feres* doctrine, noted:

"The Supreme Court and Circuit cases are consistent in holding that the status of the deceased or injured person controls. If his injury or death was connected with the military, the claimant may not recover under the Tort Claims Act."

It is worthy of note that the Supreme Court in *Feres* invited Congress to amend the Federal Tort Claims Act, if

---

United States, 217 F.2d 81 (5 Cir. 1954); Rivera-Grau v. United States, 324 F. Supp. 394 (D.N.M.1971); Coffey v. United States, 324 F.Supp. 1087 (S.D. Calif.1971); Healy v. United States, D. C., 192 F.Supp. 325, affirmed 295 F.2d 958 (2 Cir. 1961).

4. Hale v. United States, 416 F.2d 355 (6 Cir. 1969), suggests that "activity incident to service" (Feres) is a much broader concept than "course of military duty" (Brown), and that the *Brown* case might have limited the *Feres* rule to injuries received "in the course of military duty". We decline to adopt this restrictive view of the *Feres* rule.

5. Stip. § 4(a): "Glorioso received his *injury* while in the performance of military duties."

6. Accord: Kilduff v. United States, 248 F.Supp. 310 (E.D.Va.1961). This case involved a claim based upon failure of armed forces to detect and disclose to plaintiff a tubercular condition existing prior to his induction. *Kilduff* held that the failure to disclose "is a claim for an injury which arose out of or in the course of an activity incident to military service." And "[T]he examinations were a step in his entry and exit, but nevertheless an event of his service."

**4**

its interpretation was erroneous, and in the 21 years which have elapsed since *Feres,* the Congress had made no change in the Act.

We find apposite Judge Weinfeld's reasoned language in *Healy:*

"To allow this claim to be encompassed within the Federal Tort Claims Act would, in large measure, devitalize the effect of the Feres holding which Congress thus far has not seen fit to overturn: it would open the floodgates of litigation to claims inextricably wound up with active military service incidents." (192 F.Supp. 329)

On the basis of the *Feres* doctrine, the government's motion for summary judgment shall be sustained.